UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| NANCIE FELTON and SUSAN NOLAN, | : | |
| | : | |
| Plaintiffs, | : | 08 Civ. 9340 (SCR) |
| | : | |
| v. | : | **MEMORANDUM DECISION** |
| | : | **AND ORDER** |
| KATONAH LEWISBORO SCHOOL DISTRICT, | : | |
| KATONAH LEWISBORO BOARD OF EDUCATION, | : | |
| ROBERT ROELLE, Superintendent of | : | |
| Schools, Katonah Lewisboro School | : | |
| District, in his individual and official | : | |
| capacity, JOCELYN HUMPHRIES, Assistant | : | |
| Superintendent of Schools, Katonah | : | |
| Lewisboro School District, in her | : | |
| individual and official capacity, ELLEN | : | |
| DOHERTY, Former Director of Special | : | |
| Education, Katonah Lewisboro School | : | |
| District, in her individual and official | : | |
| capacity, CONNIE TAIBBI-LEWIS, Assistant | : | |
| Director of Special Education, Katonah | : | |
| Lewisboro School District, in her | : | |
| individual and official capacity, JONATHAN | : | |
| KAPLAN, Principal, Katonah Elementary | : | |
| School, Katonah Lewisboro School | : | |
| District, UNKNOWN AGENTS AND ASSIGNS OF | : | |
| KATONAH LEWISBORO SCHOOL DISTRICT, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**STEPHEN C. ROBINSON, United States District Judge.**

Nancie Felton and Susan Nolan (collectively, the "Plaintiffs") commenced this action

pursuant to 42 U.S.C. § 1983 against the Katonah Lewisboro School District (the "District") and

several of the District's employees (collectively, the "Defendants"). In their Amended

Complaint, the Plaintiffs seek redress for violations of the First Amendment, retaliation under the

Rehabilitation Act, 29 U.S.C. § 794, and the Americans With Disabilities Act ("ADA"), 42

U.S.C. § 12132, deprivations of procedural and substantive due process, and various violations of New York State laws.  The Defendants have filed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss the Amended Complaint.

For the reasons set forth in this opinion, the Defendants' motion is granted in part and denied in part.

# I

## BACKGROUND

This case is at the motion to dismiss stage, and therefore the Court assumes all material and well-pleaded factual allegations contained in the Amended Complaint. *Ashcroft v. Iqbal*, --- U.S. --- , 129 S. Ct. 1937, 1949-50 (2009) (explaining that the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

In July 2007, Ms. Nolan was hired by the District as a kindergarten special education teacher for students in the autistic spectrum.  She was slated to begin her work on the first day of the 2007-2008 school year.  At the same time, Ms. Felton was hired by the District as a teacher's aide, and she subsequently was assigned to work with Ms. Nolan.

In August 2007, Ms. Nolan ordered the supplies that she deemed necessary to provide her students with an appropriate education.  These requests were made to Mr. Kaplan, the Principal of the Katonah Elementary School.  Despite Ms. Felton's early requests, the supplies that she required were not ready by the beginning of the school year.  Ms. Nolan learned that Connie Taibbi-Lewis, the Assistant Director of Special Education, had not processed Ms. Felton's requests.  Ms. Taibbi-Lewis returned all of the forms, explaining that Ms. Felton had requested too many supplies and requesting that she trim the requests to those supplies that were absolutely

necessary. Although Ms. Felton believed that all of the supplies that she had originally requested were absolutely necessary, she complied with Ms. Taibbi-Lewis' instructions.

On the first day of school, the only furniture in the self-contained classroom was a teacher's desk, a desk for the speech therapist, and tables and chairs for the students. There were no bookcases or shelves. Ms. Nolan was forced to bring in her own supplies to help meet the needs of the special education students. The Plaintiffs routinely complained that they did not have the supplies required to provide an appropriate education for the special needs students in their class. The Amended Complaint, however, does not specifically note with whom these concerns were raised.

The Plaintiffs lacked rubber gloves, which were necessary because many of the students within the autistic spectrum have personal hygiene issues and at least one of their students required diapers. Only after repeated complaints were the Plaintiffs provided with rubber gloves, although they were told to use them sparingly because the gloves were expensive. The Plaintiffs also complained about the classroom's broken computer, high temperature, uncovered electrical outlets, and mold.

Ms. Nolan also aired her concern that the curriculum "was not scientifically based and peer reviewed." First Amended Complaint ("FAC") ¶ 40.d. Ms. Nolan was told by the District that she should adjust the curriculum using particular teaching methodologies in which she was untrained. The District eventually provided a curriculum, but the Plaintiffs deemed that curriculum inappropriate for students in the autistic spectrum. The Plaintiffs repeatedly voiced their concerns about the inadequate curriculum, but District authorities were unresponsive.

In addition, the Plaintiffs raised questions regarding the inadequacy of the student profiles; those profiles did not discuss the students' propensity to harm themselves and others.

The individualized education plans that the District provided for each student also did not describe the students' classroom behavior. The lack of adequate profiles put the students and the teachers/staff at risk of harm. Ms. Felton was injured twice by a biting student and was routinely head-butted and scratched. Ms. Nolan also was bit during the first week of school. As a result of these deficiencies and the Defendants' failure to remedy them, the Plaintiffs claim that they were unable to fulfill their responsibilities under the law to provide an appropriate education to the students in the kindergarten autism program.

Ms. Felton documented these incidents and e-mailed them weekly to Ms. Taibbi-Lewis, asking her how she and Ms. Nolan could protect themselves. Ms. Taibbi-Lewis proved unresponsive, and she told Ms. Felton to stop documenting the incidents. The Defendants became increasingly threatening and hostile, according to the Amended Complaint, although no specific threats or hostility is described therein.

After less than one month on the job, Ms. Nolan claims that she was "under significant pressure" from the Defendants. FAC ¶ 59. On September 28, 2007, Ms. Nolan was summoned to a meeting with Principal Kaplan and Ellen Doherty, the then-Director of Special Education. At this meeting, Director Doherty acknowledged the problems with the class and blamed Ms. Nolan for the failures. Director Doherty presented Ms. Nolan with a list of things that had to be improved, largely ignoring the issues that Ms. Nolan had raised over the course of the previous month. The Amended Complaint then states: "As a result of the September 28, 2007, meeting, [Ms.] Nolan felt that she had been constructively discharged from her employment with [the District], and [Ms.] Nolan gave two weeks notice at the time of the meeting, or until October 12, 2007." FAC ¶ 64.

On October 1, 2007, Principal Kaplan approached Ms. Nolan and requested that she sign a letter stating that she had tendered her resignation for personal reasons. Ms. Nolan signed the letter, but she claims to have done so "under duress." FAC ¶ 68. The Amended Complaint does not describe the factual predicate that led to Ms. Nolan feeling as though she were under duress. Then, on October 4, 2007, Ms. Nolan was told by Principal Kaplan and Director Doherty to spend the remainder of her two-week notice period at home. Ms. Nolan complied, and she was paid through the resignation date that she had selected, October 12, 2007.

After three months on the job, Ms. Felton felt significant pressure from the Defendants to quit her position as a teacher's aide. On November 19, 2007, Ms. Felton was summoned to a meeting with Principal Kaplan and Jocelyn Humphries, the Assistant Superintendent of Schools. Ms. Humphries demanded Ms. Felton's resignation and told her that, if she did not resign, she would be fired forthwith. Ms. Felton nonetheless refused to sign the resignation letter that Ms. Humphries had presented to her. It appears that Ms. Felton was then fired.

In July 2008, the Plaintiffs filed a complaint with the Office of Vocational and Educational Services with Individuals with Disabilities ("VESID") of the New York State Department of Education. The complaint detailed the District's alleged violations of federal and state laws and regulations pertaining to the education of disabled students. On September 26, 2008, the Plaintiffs were advised in a written report that VESID found one violation in response to their Complaint. That violation concerned the District's lack of formalized behavior plans for its disabled students.

## II

## DISCUSSION

### A.  Standard of Review

A motion to dismiss must granted if the complaint "fail[s] to state a claim upon which

relief can be granted."  FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss, a court must

"'accept as true the factual allegations made in the complaint and draw all inferences in favor of

the plaintiffs.'"  *Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008)

(quoting *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998)).  Recently, in

*Ashcroft v. Iqbal*, --- U.S. --- , 129 S. Ct. 1937 (2009), the Supreme Court elaborated on its

decision in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007).  In *Twombly*, the Supreme Court

held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do."  127 S. Ct. at 1964-65.

In *Iqbal*, the Court explained that there are "[t]wo working principles" that underlie its

decision in *Twombly*.  *Iqbal*, 129 S. Ct. at 1949.  First, the Court explained, the "tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."  *Id*.  It is only when a complaint includes "well-pleaded factual allegations" that "a

court should assume their veracity."  *Id*. at 1950.  Second, once a court has determined that there

are well-pleaded factual allegations, then it must "determine whether they plausibly give rise to

an entitlement to relief."  *Id.*

## B.  First Amendment Retaliation Claim

The Supreme Court of the United States has sought to strike a balance between the
government's need to exercise control over its employees, on the one hand, and those
employees' First Amendment rights as citizens, on the other. *Garcetti v. Ceballos*, 547 U.S. 410,
419 (2006).  "Government employers, like private employers, need a significant degree of
control over their employees' words and actions," the Supreme Court has explained, for "without
it, there would be little chance for the efficient provision of public services." *Id.*  Concomitantly,
the Court has recognized, "a citizen who works for the government is nonetheless a citizen," and
the "First Amendment limits the ability of a public employer to leverage the employment
relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their
capacity as private citizens." *Id.*

To establish a First Amendment retaliation claim, a government employee must therefore
show that (1) her speech was constitutionally protected; (2) she suffered an adverse employment
action; and (3) the speech was a motivating factor in the adverse employment decision. *Ruotolo
v. City of New York*, 514 F.3d 184, 188-89 (2d Cir. 2008).  An employee's speech is
constitutionally protected if the employee "spoke as a citizen on a matter of public concern."
*Garcetti*, 547 U.S. at 418 (noting that, if the employee spoke as a citizen on a matter of public
concern, then the court must determine whether the government had an "adequate justification
for treating the employee differently from any other member of the general public").  Whether an
employee spoke as a citizen on a matter of public concern is a question of law for the court to
determine, and it must be determined by reference to the content, form, and context of a given
statement in light of the record as a whole. *Mullins v. City of New York*, --- F. Supp. 2d ---, 2009
WL 1616005, at *6 (S.D.N.Y. June 9, 2009).

In *Garcetti*, the Supreme Court held that "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 424-25 (emphasis supplied) (cautioning courts to be wary of "excessively broad job descriptions" but instructing that "[t]he proper inquiry is a practical one"). At issue in *Garcetti* was a deputy district attorney's statement to his superiors that an affidavit used to obtain a search warrant contained serious misrepresentations. The Supreme Court explained that the deputy district attorney "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." *Id.* at 421. He did "not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing flings." *Id.* at 422. The Court contrasted the case before it with the facts in *Pickering*, a case in which the speaker's "letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

In light of these principles, the question here is whether Ms. Nolan and Ms. Felton have adequately pled that they spoke as citizens, rather than pursuant to their official duties, *Iqbal*, 129 S. Ct. at 1949-50—an element of their First Amendment retaliation claim, *Garcetti*, 547 U.S. at 418. The Court believes not. Although the Amended Complaint describes at some length why the Plaintiffs' statements addressed a matter of public concern, FAC ¶¶ 82, 84-88, which is undisputed, it is barren of any factual allegations suggesting that the Plaintiffs' statements were *not* made pursuant to their official duties. Indeed, the allegations contained in the Amended Complaint show otherwise. The District hired Ms. Nolan as a kindergarten teacher and Ms. Felton as a teacher's aide; they were both charged with the responsibility of teaching the

kindergarten special education class of students in the autistic spectrum.  The statements for
which they claim that the Defendants retaliated against them concerned solely their classroom
and their students and were addressed to their direct supervisors.  More important, the substance
of their statements related to their own job responsibilities:  school supplies for their kindergarten
class, the physical state of the classroom in which they taught, the appropriateness of the
curriculum, the inadequacy of their student profiles, and the safety implications (both as to them
and as to their students) of those inadequate student profiles.  The case law and the Amended
Complaint itself recognize that these responsibilities—ensuring that a classroom is well supplied,
safe, and conducive to learning and that the curriculum is substantively appropriate—are
quintessentially those of a teacher and a teacher's aide.  *See, e.g.*, FAC ¶ 41 ("As teacher and
teacher's aide in this kindergarten autism class, Plaintiffs dedicated themselves to providing an
appropriate setting and an appropriate education for the students in the kindergarten autism
program as required by federal and state law."); *see also Woodlock v. Orange Ulster B.O.C.E.S.*,
281 Fed. App'x 66, 68 (2d Cir. 2008) ("Woodlock's communications regarding M.C. and the
lack of physical education and art classes at the [school] were made pursuant to her 'official
duties' as a special education counselor, in which capacity she was responsible for monitoring
her students' behavior, needs, and progress."); *Shums v. New York City Dep't of Educ.*, 04-cv-
4589, 2009 WL 750126, at *14 (E.D.N.Y. Mar. 17, 2009).  The Amended Complaint repeatedly
explains that the Plaintiffs broached these topics with their supervisors—the Assistant
Superintendent, the Principal, and the Directors of Special Education—because, in their view,
they had not been given the resources "to fulfill their responsibilities under the law to provide an
appropriate setting and/or an appropriate education to students in the kindergarten autism
program."  FAC ¶ 42; *see also id.* ¶¶ 43-46, 52-55.

The Court concludes that the Plaintiffs spoke pursuant to their official duties as educators.  Because public employees who speak pursuant to their official duties are not insulated by the First Amendment from employer discipline, the Court grants the Defendants' motion to dismiss the Plaintiffs' First Amendment retaliation claims.

## C.  ADA and Rehabilitation Act Retaliation Claims

The Plaintiffs claim that the Defendants retaliated against them in violation of the Rehabilitation Act, 29 U.S.C. § 794, and the ADA, 42 U.S.C. § 12132.  The Defendants move to dismiss this claim on the ground that the Plaintiffs are not disabled under the meaning of these statutes and on the ground that the Plaintiffs did not engage in protected activity because their complaints were directed at management rather than an outside agency.

Although the Plaintiffs themselves are not disabled under the meaning of those statutes, they claim that they fall within the "zone of interest" protected by the statutes' anti-retaliatory provisions.  In *Ross v. Allen*, this court held that a school psychologist "who complained of an alleged violation of the [Rehabilitation] Act, [was] protected against . . . retaliation."  515 F. Supp. 972, 976 (S.D.N.Y. 1981) (noting that the school psychologist was "in the 'zone of interests' meant to protected by § 504"); *see also Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48-49 (1st Cir. 2000) ("Given the broad remedial provisions of Title VI and the Rehabilitation Act and the breadth of the anti-retaliation regulation adopted pursuant to those laws, it is not surprising that courts have accorded standing to non-disabled individuals suing because of retaliation for attempts to vindicate the rights of a disabled person.").

Moreover, it is clear that informal complaints to management are considered protected activity under the Rehabilitation Act and the ADA.  *Stofsky v. Pawling Cent. Sch. Dist.*, 06-cv-

10231, --- F. Supp. 2d ---, 2009 WL 804085, at *24 (S.D.N.Y. Mar. 27, 2009) (noting that

informal complaints to management constitute protected activity under the ADA); *Adams v. New*

*York State Thruway Auth.*, 97-cv-1909, 2001 WL 874785, at *13 (N.D.N.Y. Mar. 22, 2001)

("[I]nformal complaints to management regarding arguably disability-based discrimination fall

within the ambit of protected activity under the Rehabilitation Act." (citing *Sumner v. United*

*States Postal Service*, 899 F.2d 203, 209 (S.D.N.Y. 1990))); *see also Treglia v. Town of Manlius*,

313 F.3d 713, 720 (2d Cir. 2002). The Court therefore denies the Defendants' motion to dismiss

the Plaintiffs' claims under Rehabilitation Act and the ADA.[1]


**D. Stigma-Plus Procedural Due Process Claim**

The Plaintiffs have a asserted a stigma-plus procedural due process claim.[2] The

Defendants have moved to dismiss on the ground that the Plaintiffs had available, but failed to

avail themselves of, an adequate post-deprivation name clearing hearing—namely, an Article 78

proceeding.

"Stigma-plus" refers to a procedural due process claim in which a plaintiff is seeking

redress for injury to his reputation (the stigma) coupled with the deprivation of some "tangible

interest" or property right (the plus) without adequate process. *DiBlasio I*, 344 F.3d at 302. To

succeed on a stigma-plus claim, a plaintiff must prove that: (1) the government made

stigmatizing statements about him; (2) the stigmatizing statements were made public; and (3) the

stigmatizing statements were made concurrently with, or in close temporal proximity to, his

---

[1] The Defendants also have moved to dismiss Ms. Nolan's claim on the ground that she has failed to plead that she suffered an adverse employment action or that she was constructively discharged. Although Ms. Nolan certainly has not pled a strong claim of constructive discharge, the Court believes that it is sufficient to survive a motion to dismiss. *See, e.g.*, FAC ¶¶ 51, 55-63.

[2] In their Amended Complaint, the Plaintiffs have styled this claim as one for both substantive and procedural due process. The Plaintiffs concede that they were probationary employees, and therefore they do not have any substantive "property interest protected by the Fourteenth Amendment." *See Spang v. Katonah-Lewisboro Union Free School District*, 07 Civ. 2257, 2009 WL 1674832, at *3 n.1 (S.D.N.Y. May 18, 2009).

dismissal from government employment. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006).

In *Segal*, the Second Circuit held that, in the case before it, "involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." 459 F.3d at 214; *accord Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004). In *Spang v. Katonah-Lewisboro Union Free School District*, this Court wrote: "Presently, *Segal* is the last word in the debate, and the Court is inclined—indeed, required—to follow its logic and mandate, as other lower courts have done." *Spang*, 07 Civ. 2257, 2009 WL 1674832, at *6 (S.D.N.Y. May 18, 2009) (citing *Gates v. Williams*, No. 08 Civ. 1259, 2009 WL 723021, at *7 (S.D.N.Y. Mar. 19, 2009); *Walsh v. Suffolk County Police Dept.*, No. 06 Civ. 2237, 2008 WL 1991118, at *14 (S.D.N.Y. May 5, 2008)). There is no dispute that the Plaintiffs could have availed themselves of adequate post-deprivation remedies but failed to do so.[3] Consequently, the Court grants the Defendants' motion to dismiss the stigma-plus claim.

**E. Remaining Arguments**

The Defendants contend that Ms. Nolan's state law claims against all the Defendants must be dismissed because she failed to file a notice of claim within three months, as required by state law. *See* N.Y. EDUC. LAW § 3813(1); *see also Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 454-56 (S.D.N.Y. 2001) (New York law). The Plaintiffs respond by pointing to the public-interest exception to section 3813(1). The public-interest

---

[3] The Plaintiffs' stigma-plus claim is also deficient on an independent ground. To establish a stigma-plus claim, a plaintiff must plead that the allegedly stigmatizing statements about her "were made public." *See Spang*, 2009 WL 1674832, at *3. The Amended Complaint does not set forth any facts showing that the allegedly stigmatizing statements about them were made public.

08 Civ. 9340 (SCR)                                                                                  13

exception to section 3813(1), however, applies only when individuals are suing to obtain "relief

for a similarly situated class of the public." *Biggers*, 127 F. Supp. 2d at 455.  In this case, Ms.

Nolan's "action was not brought to vindicate a public interest" because she seeks money

damages solely for the harm allegedly done to her.  *Id.*  Nor does Ms. Nolan's charge of

discrimination, which was filed with the Equal Employment Opportunity Commission, serve as a

valid notice of claim because it was filed after the expiration of the three-month limitations

period. *Id.* at 455-56.

Accordingly, Ms. Nolan's state law claims against all of the Defendants are dismissed.

The Defendants' remaining arguments have been considered, and those arguments either are

unmeritorious or premature.

**Conclusion**

For the foregoing reasons, the Court grants the Defendants' motion to dismiss the

Plaintiffs' First Amendment retaliation claims, their stigma-plus procedural due process claim,

and their substantive due process claim.  The Court also grants the Defendants' motion to

dismiss Ms. Nolan's state law claims.

The Clerk of the Court is directed to close docket entry numbers 20 and 23.

*It is so ordered.*

Dated:  July 24        , 2009

White Plains, New York

                                                              Stephen C. Robinson
                                                              United States District Judge